**IN THE UNITED STATES BANKRUPTCY
COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE | : CHAPTER 11 |
| T.H. PROPERTIES, LP, ET AL | : |
| DEBTOR(S) | : BANKRUPTCY NO. 09-13201 |
| | : |
| UPPER HANOVER TOWNSHIP | : |
| PLAINTIFF | : |
| V | : |
| T.H. PROPERTIES, LP, T.H. PROPERTIES, INC., MORGAN HILL DRIVE, LP, NORTHGATE DEVELOPMENT COMPANY, LP | : |
| DEFENDANTS | : ADV. NO. 13-0058 |

# OPINION

BY: STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

Upper Hanover Township has filed a Complaint requesting declaratory relief as to four of the Debtors in this jointly administered case. Specifically, the Township requests that the transfers of certain real estate be declared taxable. The Debtors oppose the same. The Township moves for summary judgment on the question. A hearing on the matter was held on September 11, 2013 after which the Court took the matter under advisement. For the reasons set forth below, summary judgment will be granted in favor of the Plaintiff (the Township) and against the Defendants (the Debtors).

*Background*

The Debtors are residential real estate developers. They proposed a Chapter 11 plan wherein the equity owners would retain their interests. *See* Plan, § 7.01. Because the plan did not propose to pay creditors in full, this posed absolute priority problems. The owners addressed that problem by making a "new value" contribution. *See* Plaintiff's Undisputed Facts, ¶ 8. This contribution was in the form of real property, three phases (Phases IV, V, and VI) of the land referred to as Northgate. *Id.* The Debtors had no interest in any of the three properties. The contribution of the Northgate phases to the plan constituted the "new value" necessary to satisfy the absolute priority rule and to obtain confirmation. *Id.*

The mechanics of the transfer of the real estate are of central importance. The Northgate phases were contributed under a Transfer and Development Agreement (TDA). *See* Third Amended Joint Plan, Ex. B. Under the TDA, the Northgate phases were to be transferred to the Debtor on the Effective Date and then immediately transferred out, either to New Stream Real Estate, LLC, the lienholder on Northgate, or its designee. *Id.*, ¶ 1B. The Debtors retained an ownership interest in Northgate to the extent of any net profits from Phases IV and V. Those profits would pay creditors under the plan. *See* Plan § 7.12.

New Stream designated an entity known as GSRE 25 LLC to receive the Northgate property from the Debtor. Undisputed Facts, ¶ 8. GSRE 25 has commenced development and sale of the Northgate properties. Operating under the belief that no transfer tax applies, title companies have assisted in the sales without requiring payment of transfer tax. As of the date of this motion, 31 Northgate properties were

2

developed and sold for which no transfer tax was paid. *See* Motion, Ex. D, Seitzinger Affidavit. Unpaid transfer taxes on these sales total $24,317.47. *Id.* This prompted the Township's complaint.

*Standard for Summary Judgment*

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). Pursuant to Rule 56, summary judgment should be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). For purposes of Rule 56, a fact is material if it might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of demonstrating that no genuine issue of fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The court's role in deciding a motion for summary judgment is not to weigh evidence, but rather to determine whether the evidence presented points to a disagreement that must be decided at trial, or whether the undisputed facts are so one-sided that one party must prevail as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249-252, 106 S.Ct. at 2510-12. In making this determination, the court must consider all of the evidence presented, drawing all reasonable inferences therefrom in the light most favorable to the nonmoving party, and against the movant. *See United States v. Premises Known as 717 South Woodward Street*, 2 F.3d 529, 533 (3rd Cir.1993); *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d

Cir.1990), cert. denied, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991); *Gould, Inc. v. A & M Battery and Tire Service*, 950 F.Supp. 653, 656 (M.D.Pa.1997). To successfully oppose entry of summary judgment, the nonmoving party may not simply rest on its pleadings, but must designate specific factual averments through the use of affidavits or other permissible evidentiary material that demonstrate a triable factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553. Such evidence must be sufficient to support a jury's factual determination in favor of the nonmoving party. *Anderson, supra*, 477 U.S. at 248, 106 S.Ct. at 2510. Evidence that merely raises some metaphysical doubt regarding the validity of a material fact is insufficient to satisfy the nonmoving party's burden. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If the nonmoving party fails to adduce sufficient evidence in connection with an essential element of the case for which it bears the burden of proof at trial, the moving party is entitled to entry of summary judgment in its favor as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. at 322-23, 106 S.Ct. at 2552.

*Transfer Taxes
in Chapter 11*

The failure to assess transfer taxes is allegedly based on an express Bankruptcy Code provision: "The issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer *under a plan confirmed* under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax." 11 U.S.C. § 1146(a) (emphasis added). Congress enacted this provision to facilitate reorganization by giving debtors tax relief from stamp or similar tax, such as transfer taxes, for transfers of property pursuant to an instrument of transfer under a confirmed plan. *See*

4

*In re Jacoby–Bender, Inc.*, 758 F.2d 840, 841–842 (2d Cir.1985). Exempting the transaction from tax reduces obligations encumbering the property, thereby making a greater portion of the sale proceeds available to creditors and affords debtor a quick and efficient means of distributing and discharging its obligations under the plan. *See In re Kerner Printing Co., Inc.,* 188 B.R. 121, 124 (Bkrtcy.S.D.N.Y. 1995).

*Under a Plan Confirmed*

The parties' disagreement is whether GSRE 25's sales of the Northgate homes constitute transfers "under a plan confirmed." There is no controlling authority directly on point. While the Third Circuit has held that "a real estate transaction is made 'under a plan confirmed under section 1129' only where the sale is authorized by the terms of a previously confirmed Chapter 11 Plan," that pronouncement was made in a case involving a pre-confirmation transfer. *See Baltimore County v. Hechinger Liq. Trust (In re Hechinger)*, 335 F.3d 243, 257 (3d Cir. 2003) (holding that § 1146(c) did not apply to real estate transaction that occurs prior to the confirmation of a plan under Chapter 11 of the Bankruptcy Code). The Supreme Court reached the same result with regard to pre-confirmation transfers. *See Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 52-53, 128 S.Ct. 2326, 2339 (2008). However, neither case constitutes precedential authority for a case involving post-confirmation transfers. *See Allegheny Gen. Hosp. v. NLRB*, 608 F.2d 965, 969–970 (3d Cir.1979) *overruled on other grounds St. Margaret Mem. Hosp. v. NLRB*, 991 F.2d 1146 (3d Cir. 1993) ("A judicial precedent attaches a specific legal consequence to a detailed set of facts in an adjudged case or judicial decision, which is then considered as furnishing the rule for the determination of

5

a subsequent case involving identical or similar facts and arising on the same court or a lower court in the judicial hierarchy.)

*Persuasive Authority*

That is not to say, however, that the reasoning of *Hechinger* and similar cases is not without force. To a greater or lesser degree, all of the circuit courts which have construed the prepositional phrase "under a plan confirmed" have required that the transfer—regardless of whether the transfer in question occurred pre- or post-confirmation—be either an integral component of, or be sanctioned by, the plan. For instance, *In re Jacoby-Bender, Inc.*, 758 F.2d 840 (2d Cir. 1985), the Second Circuit declined to read the statute as "require[ing] that the plan include specifics," and instead asked whether the transfer is "necessary to the consummation of the plan." *Id.* at 841-842. The Fourth Circuit saw the question along the same lines:

> We must conclude that Congress, by its plain language, intended to provide exemptions only to those *transfers reviewed and confirmed* by the court. Congress struck a most reasonable balance. If a debtor is able to develop a Chapter 11 reorganization and obtain confirmation, then the debtor is to be afforded relief from certain taxation to *facilitate the implementation of the reorganization plan*. Before a debtor reaches this point, however, the state and local tax systems may not be subjected to federal interference.

*In re NVR, LP*, 189 F.3d 442, 458 (4th Cir. 1999)(emphasis added). As noted *supra*, the Third Circuit in *Hechinger* required the plan to "provide the authority for the transaction." *See* 335 F.3d at 252. While that might appear to be a somewhat stricter standard as compared to the Second Circuit's "necessary to consummation" rule, it is consistent with *NVR*'s "transfers reviewed and confirmed by the court" requirement. The Eleventh Circuit likewise read the prior three circuit court decisions to be

6

consonant and adopted the standard that the transfer must be "necessary to consummation":

> The Third Circuit has held that "the phrase 'under a plan confirmed' in 11 U.S.C. § 1146(c) was most likely intended to mean 'authorized by a plan confirmed.' " *In re Hechinger Inv. Co. of Del.,* 335 F.3d 335 F.3d 243, 252 (3rd Cir.2003). Similarly, the Fourth Circuit concluded that the term "under" may be construed as "[w]ith the authorization of" a Chapter 11 plan. *See In re NVR LP,* 189 F.3d 442, 457 (4th Cir.1999) (quoting *Webster's II New Riverside University Dictionary* 1256 (1988)). The Second Circuit has recognized that a chapter 11 plan impliedly authorizes any transfer that is necessary to the consummation of the plan. *See City of New York v. Jacoby–Bender,* 758 F.2d 840, 842 (2d Cir.1985) ("[W]here, as here, a transfer, and hence an instrument of transfer, is *necessary to the consummation* of a plan, the plan seems implicitly to have 'dealt with' the transfer instrument.") (emphasis added). *We agree with our sister circuits' interpretation of § 1146(c).* A transfer "under a plan" refers to a transfer authorized by a confirmed Chapter 11 plan. In turn, a plan authorizes any transfer that is necessary to the consummation of the plan.

*Dept. of Revenue v. T.H. Orlando, Ltd (In re T.H. Orlando, Ltd.)*, 391 F.3d 1287, 1291(11th Cir.2004) (emphasis added). There appears to be general agreement as to what is meant by the phrase "under a plan confirmed." This would perhaps explain why the outcomes of cases involving post-confirmation transfers for which tax protection is sought turn on their specific facts. *Compare In re Amsterdam Avenue Dev. Assoc.*, 103 B.R. 454, 461 (Bkrtcy.S.D.N.Y.1989) (holding that tax on mortgage granted by non-debtor to third-party bank in consideration of loan used to purchase property from Chapter 11 debtor was not exempt); *In re Bel Aire Investments, Inc.*, 142 B.R. 992, 996 (Bkrtcy M.D.Fla. 1992)(holding that mortgage granted by corporation created by Chapter 11 plan and to which some of corporate debtors assets were transferred in order to carry out terms of property settlement in divorce action involving debtor's

7

principals shareholders was not "under a plan confirmed" and so not tax exempt); *In re Kerner Printing Co.*, supra, 188 B.R. at 122 (invalidating plan provision allowing assignee of debtor's interest in condominium units to transfer units to third parties without paying city transfer tax); *with In re Baldwin League of Ind. Schools*, 110 B.R. 125, 127 (S.D.N.Y. 1990) (holding that mortgage transaction which provided sole source of plan funding was tax exempt transfer); *Baltimore County v. IHS Liquidating LLC (In re Integrated Health Services, Inc.)*, 2006 WL 543876, at **5-6 (Bkrtcy.D.Del. Mar. 6, 2006) (holding that transfer between a non-debtor and party created by a plan (e.g. a liquidating trustee) may be within the scope of exemption and remanding case for discovery on point);and *In re New 118th, Inc.*, 398 B.R. 791, 797-798 (Bkrtcy.S.D.N.Y.2009) (allowing transfer tax exemption on sale which was approved pre-confirmation but which closed after plan confirmed)

*Standard*

While the Court finds the rationales offered by the four circuit court decisions consistent, it places the greatest weight on the precise standard articulated by the Third Circuit's in *Hechinger, supra*. That Court's explanation of the meaning of "under a plan confirmed" was informed by "two important canons of construction." *Hechinger, supra*, 335 F.3d at 254. First, tax exemption provisions are to be strictly construed. *See United States v. Centennial Savings Bank FSB*, 499 U.S. 573, 583, 111 S.Ct. 1512, 1519, 113 L.Ed.2d 608 (1991) ("[T]ax-exemption and ... deferral provisions are to be construed narrowly."); *United States v. Wells Fargo Bank*, 485 U.S. 351, 354, 108 S.Ct. 1179, 1182, 99 L.Ed.2d 368 (1988) ("[E]xemptions from taxation ... must be unambiguously proved."); *United States Trust Co. v. Helvering*, 307 U.S. 57, 60, 59

8

S.Ct. 692, 693, 83 L.Ed. 1104 (1939) ("Exemptions from taxation do not rest upon implication.")  Second, federal laws that interfere with a state's taxation scheme must be narrowly construed in favor of the state. *See Nat'l Private Truck Council v. Oklahoma Tax Comm'n.*, 515 U.S. 582, 590, 115 S.Ct. 2351, 2356, 132 L.Ed.2d 509 (1995) (noting the "strong background presumption against [federal] interference with state taxation"); *California State Bd. of Equalization v. Sierra Summit, Inc.*, 490 U.S. 844, 851–52, 109 S.Ct. 2228, 2234, 104 L.Ed.2d 910 (1989) ("[A] court must proceed carefully when asked to recognize an exemption from state taxation that Congress has not clearly expressed."); *Swarts v. Hammer*, 194 U.S. 441, 444, 24 S.Ct. 695, 696, 48 L.Ed. 1060 (1904) ("If Congress wished to exempt a bankrupt from state and municipal taxation, the intention would be clearly expressed, not left to be collected or inferred from disputable considerations of convenience in administering the estate of the bankrupt.")  Unless there is a clear basis for exempting the transfers from otherwise applicable taxation, the Township's request should be granted.

*Arguments*

In asserting that the transfers are exempt, the Debtors rely primarily on the Eleventh Circuit's decision in *T.H. Orlando, supra*.  Debtors' Brief, 7.  That case also involved a post-confirmation transfer between two non-debtors.  The transfer was held tax exempt because it was deemed necessary to consummation of the plan.  391 F.3d at 1295. The transfers from GSRE 25 to the homeowners at Northgate, Debtor asserts, are "[e]qually important and integral to the Plan as they are the source of creditor distributions.  Debtor's Objection, 7. The transfers, they say, were contemplated and authorized by the plan and are, therefore, entitled to tax protection.  *Id.*

The Township disputes the contention that *T.H. Orlando* is apposite. The case is distinguishable, says the Township, because the plan in that case <u>specifically</u> referred to the non-debtor transaction. Township's Brief 14 n. 3. It emphasizes that named in the plan were the specific parties, the dollar amount, and the transfer as a condition precedent to confirmation. While the transfer under the TDA from the Debtor to GSRE 25 is specifically authorized by plan, transfers from GSRE 25 to third-parties are nowhere described therein. *Id.*; Supplemental Brief, 3. The ultimate sales of the homes therefore do not constitute transfer "under a plan confirmed." Township's Brief, 16.

*Analysis*

The Court finds the Township to have the better part of this argument. Unlike the specific transfer in *TH. Orlando*, the subsequent transfers from GSRE 25 to the future homeowners are not mentioned in the plan. The transfers that are mentioned in the plan are the transfers set forth in the TDA: i.e., the contribution of the three Northgate phases to the Debtor and the Debtor's immediate transfer of the same property to the Northgate lienholder's designee. The Court is constrained to agree with the Township that the instant matter is more akin to the facts in *Kerner Printing, supra*. That case likewise involved an effective date transfer to the debtor and an immediate transfer of the same real property to a newly created entity ("New Kerner"). New Kerner intended to sell that real estate (condominiums) free from otherwise applicable transfer taxes. That exemption was denied based on the Court's finding that the subsequent sales of the condominiums would not affect the plan's consummation. 188 B.R. at 122.

Like the condominiums in *Kerner*, the Northgate property will be developed and sold independent of any terms in the plan. No special authorization is needed for that to

occur. It is up to GSRE 25 to decide how and when the developed properties are sold. Nor are the future sales necessary for formal consummation of the plan. There is no indication in the plan or supporting documents that the ultimate transfers of the developed real estate on a tax free basis was a condition precedent to confirmation. Neither does the Debtor's obligation to pay any "net profits" from Phases IV and V to creditors necessitate that subsequent sales must necessarily be tax free. Taxes may reduce net profit, but the plan does not guarantee a fixed payment; merely that creditors be paid to the extent of net profits. The connection that the future transfers have to the plan is attenuated in this regard. As such, they cannot be considered as having been made under a plan confirmed for present purposes.

*Summary*

The Township's motion for summary judgment will be granted. Future transfers made by GSRE 25, LLC, or any other non-debtor third party grantor, to any third party purchaser/grantee of the Northgate subdivision, located in Upper Hanover Township, Pennsylvania, are not exempt from applicable transfer taxes. Further, judgment shall be entered in favor of the Township in the agreed amount of the uncollected local transfer tax for those properties already sold.

An appropriate order follows.

By the Court:

_____
Stephen Raslavich
U.S. Bankruptcy Judge

Dated: October 2, 2013